UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COLEY GASSAWAY,

               Plaintiff,

v.                                         Case No. 12-2769-JTM

JARDEN CORPORATION, et al.

               Defendants.


## ORDER

      This action arises out of a house fire that resulted in the deaths of plaintiff Coley Gassaway's two children. Plaintiff alleges that defendant[1] Sunbeam Products, Inc. was negligent in the manufacture, design, inspection, testing, and marketing of certain "space heaters" she purchased and that the fire was caused by defects in one of the subject heaters. Plaintiff seeks wrongful death damages from defendant under theories of strict product liability, negligence, breach of warranty, and violations of the Kansas Consumer Protection Act. Currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, is a motion to compel defendant to supplement its answers to plaintiff's first set of interrogatories **(doc. 67)**. Plaintiff also asks that the court strike defendant's objections to the interrogatories, award fees and costs, and impose sanctions against defendant. For the reasons discussed below, plaintiff's motion is granted in part and denied in part.

---

[1] As used in this order, "defendant" refers to Sunbeam Products, Inc.

On May 17, 2013, plaintiff served her first set of interrogatories on defendant.[2] Defendant served its answers to plaintiff's first set of interrogatories on June 17, 2013.[3] Plaintiff sent a "golden rule" letter concerning defendant's interrogatory answers on June 24, 2013.[4] The letter focused on defendant's objection that it had not yet identified the specific model of the subject heater remains and its date of manufacture.[5] At this time, the subject heater is believed to be a Holmes HQH307 quartz space heater ("HQH307"). After several exchanges between the parties' counsel, plaintiff sent a second golden rule letter to defendant, outlining her concerns with defendant's answers and objections.[6] In response, defendant agreed to amend its interrogatory answers and objections in an attempt to address plaintiff's concerns.[7] Plaintiff informed defendant that it had until July 10, 2013 to withdraw all of its objections and supplement all of its answers or plaintiff would seek court intervention.[8] Defendant served amended interrogatory answers on July 10, 2013.[9] After several failed attempts to resolve the discovery dispute, plaintiff filed

---

[2] Doc. 41.

[3] Ex. 8 to doc. 72.

[4] Ex. 13 to doc. 72.

[5] *Id.*

[6] Ex. 17 to doc. 72.

[7] Ex. 18 to doc. 72.

[8] Ex. 19 to doc. 72.

[9] Ex. 20 to doc. 72.

her motion to compel discovery on July 29, 2013.[10]   Defendant timely filed its response on August 12, 2013.[11]  Plaintiff filed her reply on August 27, 2013.[12]

Fed. R. Civ. P. 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  When a party files a motion to compel and asks the court to overrule objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[13]  Objections initially raised but not supported in response to the motion to compel are deemed abandoned.[14]  However, if the discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[15]

Here, plaintiff seeks an order striking defendant's objections to plaintiff's interrogatories and compelling defendant to supplement its interrogatory answers.  With this standard in mind, the court addresses each of the objections.

---

[10] Doc. 67.

[11] Doc. 72.

[12] Doc. 73.

[13] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[14] *In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011).

[15] *Id.*

## I.     General Objections.

In the District of Kansas, general objections are considered "overly broad and worthless unless the objections are substantiated with detailed explanations."[16]   Our courts disapprove of the practice of asserting a general objection "to the extent" it may apply to particular requests for discovery.[17]

Defendant's answers to plaintiff's first set of interrogatories included "general objections."[18]   Plaintiff informed defendant that these were improper and asked that the objections be withdrawn.[19]   In response, defendant prepared amended objections, replacing its general objections with "objections to definitions."[20]   Plaintiff asserts "that the 'objections to definitions' are simply general objections and that 'general objections' and 'objections to definitions' are improper" and not permitted in the District of Kansas.[21]   Defendant responds that its "objections to definitions" are proper because it provided detailed explanations for them and that therefore they should not be stricken.[22]

---

[16] *Terracon Consultants Inc. v. Drash*, No. 12-2345, 2013 WL 1633572, at *1 (D. Kan. Apr. 16, 2013).

[17] *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660-61 (D. Kan. 2004).

[18] Ex. 3 to doc. 68.

[19] Ex. 17 to doc. 72.

[20] Ex. 6 to doc. 68.

[21] *See* doc. 68 at 4-5.

[22] Doc. 72.

This debate about the propriety of general objections "appears to be an academic exercise" which the court need not belabor.[23] Nonetheless, the court will briefly address this issue since the parties were previously warned that unsubstantiated objections would not be tolerated in this case.

In *Johnson v. Kraft Foods North America, Inc.*, the court stated:

> This Court has on several occasions disapproved of the practice of asserting a general objection "to the extent" it may apply to particular requests for discovery. The Court has characterized these types of objections as "worthless for anything beyond delay of the discovery." Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such ostensible objections waived or declined to consider them as objections at all.[24]

Defendant, as the party resisting discovery, has the burden of supporting all of its objections, including its general objections.[25] The court finds that defendant's "objections to definitions" are nothing more than "general objections" and defendant made no meaningful effort to show how any of the general objections apply to a specific interrogatory. Even though defendant's objections aren't listed "to the extent" that the

---

[23] *Terracon Consultants Inc.*, *v. Drash*, No. 12-2345, 2013 WL 1633572, at *1 (D. Kan. Apr. 16, 2013).

[24] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269, 2011 WL 4036424, at *10 (D. Kan. Sept. 12, 2011) (citing *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006)).

[25] *Id.*

objection applies to any of the set of interrogatories, they are meaningless and hypothetical because they are <u>not</u> applied to specific interrogatories. Therefore, the court finds that defendant's "general objections" and "objections to definitions" to plaintiff's first set of interrogatories are waived.

## II.    Timeliness of Objections.

It is well settled that the failure to timely assert an objection to an interrogatory results in waiver of the objection.[26]  Fed. R. Civ. P. 33(b)(1) provides that "[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections, if any, within 30 days after the service of the interrogatories."  Subsection (b)(4) of the Rule further provides that "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."[27]

Plaintiff served her first set of interrogatories on May 17, 2013.[28]  On June 4, 2013, defendant asked plaintiff for a 30-day extension to respond to plaintiff's interrogatories because defendant had not seen a significant portion of the heater remnant in the possession of the Kansas City, Kansas Fire Department and had not been able to

---

[26] *Swackhammer*, 225 F.R.D. at 665.

[27] Fed. R. Civ. P. 30(b)(4).

[28] Ex. 1 to doc. 72.

positively confirm the model number.[29]   Plaintiff denied defendant's request for an

extension.[30]   Defendant timely served its interrogatory answers on June 17, 2013.[31]   On

July 10, 2013, defendant served amended answers, to narrow and clarify its initial

positions, provide specific bates numbers for responsive documents, and direct plaintiff

to supporting authorities.[32]   Plaintiff maintains that defendant's amended objections to

plaintiff's interrogatories should be stricken because they are untimely by over three

weeks.[33]   Defendant responds that it did not assert new objections in its amended answers

and that therefore, plaintiff's request should be denied.[34]

After reviewing and comparing defendant's original and amended answers to

plaintiff's first interrogatories, the court finds that only one new objection was asserted

by defendant in its amended answers.   Defendant did not assert an objection to

Interrogatory No. 8 in its original answer.[35]   However, defendant's amended answer to

Interrogatory No. 8 contains an objection that the question is "overly broad and vague in

---

[29] Ex. 6 to doc. 72.

[30] *Id.*

[31] Ex. 8 to doc. 72.

[32] Doc. 72 at 7.

[33] Doc. 68 at 5.

[34] Doc. 72 at 11.

[35] Ex. 3 to doc. 68 at 7.

that it proposes a factual scenario which is incomplete."[36]  Because defendant failed to

show good cause for asserting this new objection, it is deemed waived.  However, the

court finds that defendant's remaining amended answers to plaintiff's interrogatories

merely narrow and clarify its original objections and answers and withdraw some of its

previous objections.  The court need not spend time and resources analyzing objections

that have been withdrawn.  Therefore, the court will only consider defendant's amended

answers and objections going forward.

## III.    Objection Regarding Identification of the Subject Heater.

Defendant amended its interrogatory answers and omitted the identification

objection from its responses to plaintiff's individual interrogatories.  Therefore, the court

need not address this objection since it has been withdrawn.

## IV.    Objections and Answers to Individual Interrogatories.

Under Rule 33(b)(3) of the Federal Rules of Civil Procedure, the responding party

must answer each interrogatory "to the extent it is not objected to."  Defendant served

answers <u>and</u> objections to Interrogatory Nos. 2, 5, 8, 9, 10, 11, and 13.  The court has

substantial discretion to determine the propriety of such requests and the sufficiency of

responses.[37]  An objection and answer preserves nothing and serves only to waste the

---

[36] Ex. 6 to doc. 68 at 10.

[37] *Audtiotext Commc'ns Network Inc. v. US Telecom, Inc.*, No. 94-2395, 1995 WL
625744, at *1 (D. Kan. Oct. 5, 1995).

time and resources of both the parties and the court.[38] As evidenced by the parties' briefs, "such practice leaves the requesting party uncertain as to whether the question has been fully answered or whether only a portion of the question has been answered."[39] Some courts have found that whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive stands.[40] The court is inclined to hold defendant's objections that are accompanied by an answer are waived. Nonetheless, the court will address the validity of defendant's objections.

### A.     Overbroad Objections.

Defendant objected to Interrogatory Nos. 2, 5, 8, 9, and 11 as overly broad. As determined earlier, defendant's objection to Interrogatory No. 8 has been waived and need not be addressed. Plaintiff argues that defendant waived its objections to Interrogatory Nos. 2, 5, 9, and 11 because defendant did not state why it believed each interrogatory was overbroad. Defendant responds that its objections are appropriate and it fully explained the grounds for each objection.

Interrogatory No. 2 asks defendant to identify all "complaints or reports of malfunctioning space heaters you have received since 2003." Interrogatory No. 5 asks if anyone has filed suit or brought legal action against defendant for "damages arising out

---

[38] *Consumer Electronics Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008).

[39] *Id.* (*See* Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18).

[40] *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 07-343, 2011 WL 1232347, at *2 (M.D. Fla. Mar. 30, 2011).

of the malfunction of space heaters or fires of space heaters" within the past ten years.
Defendant argues that these questions are overly broad on their face because they are not limited to the same or substantially similar products and instead request claim and lawsuit information for all models of defendant's space heaters. The court agrees with defendant that these requests, which request information on all models of defendant's space heaters, are overly broad on their face. Defendant provided sufficient detail in its answers to explain why these requests were overbroad. Defendant may limit its answer to the HQH307 and similar quartz model heaters as it has done in response to other discovery requests. As it stands though, plaintiff's request for the court to order defendant to withdraw these objections is denied.

Interrogatory No. 9 asks defendant to "identify all quartz heater models manufactured or sold by you since 2000" and for each model identified, state the "dates the heater was manufactured, the dates the heater was sold, the number of units sold, the suggested retail price of the heaters, the cost to manufacture and ship the heater, and the target market of the heater." In support of its overbroad objection, defendant stated that the request seeks information concerning other products manufactured and sold by defendant during unrelated time periods.

As the party making this objection, defendant has the burden to support it.[41] This includes any objection to the temporal scope of the request. Defendant responded that

---

[41] *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 09-2517, 2010 WL 4117508, at *6 (D. Kan. Oct. 19, 2010).

the product at issue was allegedly purchased in November/December 2009 but provided no further explanation. In addition, defendant made no objection to the temporal scope of other interrogatories requesting information since 2003. This request is not overly broad on its face and defendant has failed to meet its burden. Therefore, the court overrules defendant's overly broad objection to the temporal scope of this interrogatory.

Defendant also asserts this interrogatory is overly broad because its relevance is not readily apparent. Relevance, at the discovery stage, is broadly construed. Generally, "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[42] A court should allow a request for discovery "unless it is clear that the information sought can have no possible bearing" on the claim at issue.[43] "When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the ordinary presumption in favor of broad disclosure."[44]

Defendant simply states in its response that Interrogatory No. 9 is "overly broad on its face because its relevance is not readily apparent." Defendant provides no

---

[42] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citations omitted).

[43] *Id.* (citations omitted).

[44] *Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

additional evidence to support its assertion and fails to meet its burden. Therefore, defendant's overly broad objection as it relates to relevancy for Interrogatory No. 9 is overruled.

Interrogatory No. 11 asks defendant to "identify each component or part of the subject heater." Defendant objected to this request because it is "overly broad due to the use of the terms 'each component or part of the subject heater.'" Defendant explains that the subject heater consists of multiple component parts and to respond to this request with respect to every component part is unduly burdensome. Defendant suggests that it could supplement its answer if plaintiff specified a particular component or part of interest. While a close call in this case, the court finds that asking defendant to identify each component or part of one specific heater is not overly broad on its face. Defendant fails to meet its burden to show this request is objectionable simply by explaining that the subject heater consists of "multiple component parts."

Defendant also claims this request is overly broad because its relevance is not readily apparent. Once again, defendant fails to assert any additional evidence to support its assertion and fails to meet its burden. Defendant's objection on the ground that this request is overly broad is overruled.

Defendant also objects to this request as unduly burdensome. As the party objecting to discovery, defendant has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is

unduly burdensome.[45]  This imposes an obligation on defendant "to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure" required to respond to the requested discovery.[46]  The court will then balance the burden on the interrogated party against the benefit to the discovering party of having the information.[47]

A party asserting undue burden may not rest on its assertion, but must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.[48]  Defendant has provided only conclusory allegations and has not offered any detailed explanation, affidavit, or other evidence demonstrating that it will suffer undue burden and expense complying with this discovery request.  Defendant's objection on this ground is overruled.

### B. Vague and Ambiguous Objections.

Defendant amended its interrogatory answers and omitted the vague and ambiguous objections from its answers to Interrogatory Nos. 2, 5, and 9.  Therefore, the court need not address these objections since they effectively have been withdrawn.

---

[45] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (citing *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991)).

[46] *Id.*

[47] *McBride v. Medicalodges, Inc.*, Nos. 06-2535, 06-2536, 06-2538, 2008 WL 1958350, at *4 (D. Kan. May 2, 2008).

[48] *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citations omitted).

### C.    Specific Objections and Answers.

Plaintiff asserts that defendant improperly objected and insufficiently answered many interrogatories.

### 1.    Interrogatory No. 2.

Interrogatory No. 2 asks defendant to identify all complaints or reports of malfunctioning space heaters it has received since 2003.  For each complaint or report, defendant is asked to identify: (a) the name, address, phone number, and e-mail address for the person making the complaint or report; (b) the date the complaint or report was first received; and (c) the actions taken in response to the complaint or report.

Plaintiff asserts that defendant's amended answer is insufficient because it provides only minimal responsive information, limited to only the HQH307.  As discussed earlier, this interrogatory is overly broad on its face in that it asks for information concerning *all* of defendant's space heaters.  Defendant provided the identities of claimants/plaintiffs, incident locations and dates of first notice for past claims and lawsuits involving the HQH307, the subject heater at issue.  Also, defendant asserts that it identified Bates numbers for documents which contain detailed information for past claims and lawsuits for both the HQH307 and other quartz model heaters manufactured by defendant.

Plaintiff asked defendant to identify all "complaints and reports" of malfunctioning space heaters.  Defendant limited its answer to "claims and lawsuits" involving the HQH307.  Defendant is ordered to supplement its answer to include

information for all complaints or reports, including complaints or inquiries made to the Consumer Products Safety Commission or Jardencs.com, involving the HQH307 and other similar quartz model heaters. In addition, defendant shall supplement its answer to provide information regarding what actions it has taken in response to any complaint or report as requested by this interrogatory.

### 2. Interrogatory No. 3.

Interrogatory No. 3 asks defendant to "identify all documents submitted by you to government regulators or industry testing agencies for the subject heater model and other quartz type heaters manufactured by you." Defendant responded that the HQH307 was UL listed and ETL/Intertek listed and identified Bates numbers for responsive documents. Defendant asserts that the identified documents describe in detail the foundation for the listings for both the HQH307 and other quartz model heaters manufactured and sold by defendant. Plaintiff requests information for both the subject heater model and other quartz type heaters manufactured by defendant. To the extent the documents identified by defendant do not provide responsive information for similar quartz heaters manufactured by defendant, defendant is ordered to supplement its answer to provide that information.

### 3. Interrogatory No. 5.

Interrogatory No. 5 asks if anyone has filed suit or brought legal action against defendant for "damages arising out of the malfunction of space heaters or fires of space heaters" within the past ten years. As discussed earlier, this interrogatory is overly broad

on its face in that it asks for information concerning *all* of defendant's space heaters. Defendant provided the identities of claimants/plaintiffs, incident locations and dates of first notice for past lawsuits involving the HQH307 and provided Bates numbers for documents, which it asserts contain detailed information for past lawsuits for both the HQH307 and other quartz model heaters manufactured and sold by defendant. Defendant did not identify the date each lawsuit was filed, the case number and jurisdiction of each lawsuit, whether the lawsuit had been settled or otherwise resolved or the product alleged to have been defective. Defendant is ordered to supplement its answer to include the foregoing information involving the HQH307 and similar quartz model heaters.

### 4. Interrogatory No. 6.

Interrogatory No. 6 asks defendant to identify the quality control measures or actions it has implemented to verify that each component provided by suppliers or manufacturers of parts or components of the subject space heater was in compliance with design and quality specifications. For each such measure or action, plaintiff asked that defendant identify: (a) the person responsible for the compliance; (b) the date of initiation; (c) any documents generated; and (d) any instances of non-compliance with design or quality standards. Defendant responded that the HQH307 was subjected to quality and operational testing during the design and manufacturing stages of its development as well as ongoing reliability testing after production so that it would operate safely and effectively, and also identified Bates numbers for responsive documents.

Plaintiff argues this answer is non-responsive because it fails to provide information requested by parts a, b and c. Defendant asserts the identified responsive documents contain detailed information for all quality and safety testing completed as well as all employee work instructions for testing, assembly, and quality control for the HQH307 and other quartz model heaters manufactured and sold by defendant.

To the extent the documents identified by defendant do not address parts a, b and c of plaintiff's request, defendant is ordered to supplement its answer to provide the requested information. Answering interrogatories by specifying responsive business records is permissible but "specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."[49] Defendant is strongly encouraged to review its reference to bates numbers in its response to this interrogatory and ensure that only specific documents that answer this request in sufficient detail are identified. To the extent defendant failed to identify *only* specific documents which provide the information requested, defendant is ordered to amend its answer or provide a written response.

### 5. Interrogatory No. 7.

Interrogatory No. 7 asks defendant to identify any testing and quality control measures performed by it on the HQH307 and similar quartz heaters manufactured by it before they were shipped from the factory. For each such measure or action, defendant is

---

[49] *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470, 2005 WL 44534, at *4 (D. Kan. Jan. 7, 2005) (citing Fed.R.Civ.P. 33(d)).

asked to identify: (a) the person responsible for compliance; (b) the date of initiation; (c) any documents generated; and (d) any instances of non-compliance with design or quality standards and if measures varied over time, the time periods each measure was utilized. Here again, defendant responded that the HQH307 was subjected to quality and operational testing during the design and manufacturing stages of its development as well as ongoing reliability testing after production so that it would operate safely and effectively, and identified Bates numbers for responsive documents.

Plaintiff argues this answer is non-responsive because it fails to provide information requested by parts a, b, c and d because it does not provide information for similar quartz heaters. Defendant asserts the identified responsive documents contain detailed information for all quality and safety testing completed as well as all employee work instructions for testing, assembly and quality control for the HQH307 and other quartz model heaters manufactured and sold by defendant. To the extent the documents identified by defendant do not address parts a, b, c, and d of plaintiff's request as to similar quartz model heaters, defendant is ordered to supplement its answer to provide that information. Once again, defendant is strongly encouraged to review its reference to bates numbers in its response to this interrogatory and ensure that only specific documents that answer the request in sufficient detail are identified. To the extent defendant failed to identify *only* specific documents which provide the information requested by this interrogatory, defendant is ordered to amend its answer or provide a written response.

### 6.    Interrogatory No. 8.

Interrogatory No. 8 asks defendant if it has manufactured space heaters that, when working as designed, do not cause combustibles such as clothing to ignite if placed within six inches of the heater.   If so, defendant is asked to identify the model of the heater, the years the model was manufactured, the cost to produce the heater, and the suggested retail price of the heater.   Defendant responded that all heaters manufactured and sold by it contain specific instructions which state that combustible materials must be kept at least three feet from the front, sides, and rear of these heaters.   In addition, defendant identified Bates numbers for documents that describe all relevant safety instructions and warnings relating to placing combustibles in close proximity to the HQH307 and other quartz heaters manufactured and sold by defendant.

Plaintiff asserts this answer is non-responsive because it does not provide "any information regarding space heaters manufactured by defendant Sunbeam that do not ignite combustibles placed within 6 inches of the heaters."   Defendant responds that it referred to specific instructions for all other heaters manufactured and sold by it and identified responsive documents as well.   The court tends to agree with plaintiff.   Plaintiff did not ask if defendant has manufactured and produced space heaters with or without *instructions* regarding the placement of combustibles in close proximity to the heater. Rather, plaintiff asked if defendant has manufactured any space heaters that, when working as designed, do not cause combustibles to ignite if they are within six inches of the heater.   Defendant is ordered to supplement its answer to address the specific question

raised by plaintiff in Interrogatory No. 8. To the extent defendant failed to identify *only* specific documents which provide the information requested by this interrogatory, defendant is ordered to amend its answer.

### 7. Interrogatory No. 9.

Interrogatory No. 9 asks defendant to identify all quartz heater models manufactured or sold by it since 2000 and, for each model, to state the dates the heater was manufactured, the dates the heater was sold, the number of units sold, the suggested retail price of the heater, the cost to manufacture and ship the heater, and the target market of the heater. Defendant listed all quartz model heaters it has manufactured and sold and identified Bates numbers for documents which it asserts contain detailed information concerning the manufacturing costs, shipment and sale of the HQH307 and other quartz heaters manufactured and sold by defendant.

Plaintiff asserts defendant's answer is non-responsive because it lacks information regarding the dates of manufacture, the dates of sale, the number of units sold, the suggested retail price of the heater model, the cost to manufacture and ship the heater, and the target market of the heater. Defendant's answer appears to address the particular costs of manufacture and the total number of units shipped to retailers. However, there is no indication that the responsive documents contain information concerning the date the heaters were manufactured, the dates the heaters were sold, the suggested retail price of the heaters, the cost to ship the heaters or the target market for the heaters. To the extent the documents identified by defendant do not address all of the subparts to Interrogatory

No. 9, defendant is ordered to supplement its answer to provide that information. If defendant failed to identify *only* specific documents which provide the information requested by this interrogatory, defendant is ordered to amend its answer or provide a written response.

**8.**      **Interrogatory No. 10.**

Interrogatory No. 10 asks if it is defendant's contention that the deaths of plaintiff's children and/or damages were caused in whole or in part by the acts or omissions of any other person. If so, defendant is asked to provide the following: (a) identify the name, present address, occupation, title, and professional relationship to defendant of any such person; (b) a summary of all facts in support of its contention; (c) how or in what manner such other person(s) caused or contributed to plaintiff's injuries; (d) a summary of all facts in support of defendant's contention; (e) identify the name, present address, occupation and title of all persons, including experts who may testify at the trial of this matter, who have any knowledge in support of defendant's contention; and (f) how or in what manner such event or condition caused or contributed to plaintiff's injuries. Defendant objected to this interrogatory on the grounds that it seeks information protected by the work product privilege and information, which is the subject of an expert(s) opinion, or reports, and is not required to be disclosed at this time. However, defendant also answered that it did not withhold discovery material on the basis of privilege or work product and identified Bates numbers for documents which it claims contain information relating to its investigation of plaintiff's claims to date.

Plaintiff first asserts that defendant's answer is "non-responsive to parts a-i because Defendant's Answers did not address those parts." Defendant responds that it provided Bates numbers for documents which contain all information relating to its investigation of plaintiff's claims to date. But merely providing documents regarding defendant's investigation obviously does not address plaintiff's question as to whether defendant contends the deaths and/or damages were caused in whole or in party by any other person. Defendant is ordered to supplement its response to directly address the question posed by plaintiff in Interrogatory No. 10, including all sub-parts if necessary. To the extent defendant failed to identify *only* specific documents which provide the information requested by this interrogatory, defendant is ordered to amend its answer.

Next, plaintiff asserts that defendant's objection to Interrogatory No. 10 indicates documents and information are protected by the work product doctrine; however, defendant did not provide a privilege log. Plaintiff asks that defendant's work product privilege be waived because defendant failed to provide a privilege log. Defendant responds that it specifically stated that it has not withheld discovery material on the basis of privilege or work product and that it would supplement its answer in the event additional information is discovered.

Defendant, as the party asserting work product privilege, has the burden of establishing that the privilege applies.[50] To carry that burden, defendant must make a

---

[50] *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000) (citations omitted).

"clear showing" that the asserted objection applies.[51]  Defendant must also "describe in detail" the documents or information sought to be protected and provide "precise reasons."[52]

As the party asserting the privilege/work product objection, defendant must also provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied.[53]  A "blanket claim" as to the applicability of the privilege/work product doctrine does not satisfy the burden of proof.[54]  "A party's failure to meet this burden when the trial court is asked to rule upon the existence of the privilege/work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made."[55]

Here, defendant asserts the privilege, provides no basis or explanation for doing so, provides an answer subject to its objection, and states that it has not withheld discovery on the basis of the privilege.  Defendant's response is unclear and confusing.  This is precisely the reason why objecting *and* providing an answer subject to the objection is frowned upon by the courts.  Defendant failed to meet its burden to show the work product privilege applies to this request.  Therefore, its objection is overruled.

---

[51] *Id.* (citations omitted).

[52] *Id.* (citations omitted).

[53] *Id.* (citations omitted).

[54] *Id.* (citations omitted).

[55] *Id.* (citations omitted).

Finally, plaintiff asserts that defendant's objection to disclosing information, which is the subject of an expert(s) opinion requires defendant to declare whether its consultants are experts because, "if they are merely consultants and not experts, their opinions may not be withheld pursuant to the Court's expert designation timelines." Defendant responds that the opinions of "consulting experts" are protected from discovery pursuant to Fed. R. Civ. P. 26(b)(3) and 26(b)(4). Defendant further responds that it "has not yet designated its testifying experts and thus discovery requests relating to information from experts is premature."

Defendant objects to the question on the grounds that it seeks information which is the subject of an expert opinion; yet, defendant answers the interrogatory subject to its objection and claims it has not withheld any discovery material on the basis of this privilege. Defendant has failed to meet its burden to support this objection. Therefore, the objection is overruled.

Plaintiff asks that the court order defendant to declare whether defendant's consultants are its experts. Pursuant to the scheduling order, defendant need not identify its testifying experts until December 2, 2013 (doc. 39). Plaintiff's request is premature and denied.

### 9. Interrogatory No. 11.

As earlier indicated in Section IV(A) of this order, Interrogatory No. 11 asks defendant to identify each component or part of the subject heater. For each part identified, defendant is asked to identify: (a) the name and address of the manufacturer;

(b) the cost of the part or component; (c) the design specifications for the part or component; (d) whether any indemnification agreement exists; (e) identify by name any other models of heaters manufactured or sold by defendant that it produced parts for; and (f) list the cost to defendant of each part or component. Defendant responds that the request is overbroad on its face because it fails to identify a particular component of interest. Nonetheless, defendant identified Bates numbers for documents which contain detailed information concerning all component parts, suppliers, and manufacturing costs associated with the HQH307.

Plaintiff argues that defendant's answer is non-responsive to parts a-f. Defendant appears to argue its listing of the documents is sufficient. As decided earlier, the court does not believe that Interrogatory No. 11 is overly broad on its face, and defendant's objection on that basis has been overruled. To the extent the documents identified by defendant do not address all of the subparts to Interrogatory No. 11, defendant is ordered to supplement its answer to provide that information. If defendant failed to identify *only* specific documents which provide the information requested by this interrogatory, defendant is ordered to amend its answer or provide a written response.

### 10.    Interrogatory No. 12.

Interrogatory No. 12 asks defendant to describe each and every safety feature considered for the subject heater model, describe how the feature operates, and explain why the feature was or was not included in the model. Defendant answered by listing the safety features and components that were considered *and* utilized. In addition, defendant

identified Bates numbers for documents, which it asserts describe the purpose of the HQH307's safety features and its compliance with relevant safety and design standards.

Plaintiff asserts that defendant's answer is non-responsive because it does not identify what safety features were considered but *not* installed on the HQH307 and why the safety features were or were not included. Defendant responds that it included information for safety features considered and utilized on the HQH307. However, the question asks for all safety features considered, *whether or not they were utilized*, and an explanation as to why each feature was included or not. To the extent the documents identified by defendant do not address safety features considered but not utilized in the HQH307 and why such features were included or not, defendant is ordered to supplement its answer to provide that information. If defendant failed to identify *only* specific documents which provide the information requested by this interrogatory, defendant is ordered to amend its answer or provide a written response.

## 11.    Interrogatory No. 13.

Interrogatory No. 13 asks defendant to identify any instances of non-compliance with design standards or specifications defendant encountered or was made aware of regarding each supplier or manufacturer identified in their answer to Interrogatory No. 11. Defendant's answer states that there were no instances of non-compliance with regard to the HQH307. Plaintiff argues this answer is non-responsive because it does not list any instances of non-compliance with design specifications. Defendant responded that there were no instances of non-compliance. If there were no instances of non-

compliance, there is nothing for defendant to list or identify. Therefore, plaintiff's request for defendant to supplement its answer to Interrogatory No. 13 is denied.

### 12. Interrogatory No. 14.

Along the same lines as Interrogatory No. 8, plaintiff asks in Interrogatory No. 14 for defendant to list any safety features or design changes, known to defendant to be available for installation on the HQH307 or other quartz space heaters that would prevent combustible material such as clothing from igniting if placed within six inches of the heater. Defendant answered that it "is not aware of any safety features or design changes for installation on the HQH307 that would not change the efficacy or structure of the heater that would prevent combustible materials placed too close to the heater from igniting."

Plaintiff asserts this answer is non-responsive because it does not state what safety features or design changes were known to defendant, but not included on the HQH307. Defendant reiterates that it is not aware of any safety features or design changes for installation on the HQH307 that would prevent combustible material placed too close to the heater from igniting. Defendant's answer directly addresses plaintiff's question. Therefore, plaintiff's request for defendant to supplement its answer to Interrogatory No. 14 is denied.

### D. Sanctions.

Plaintiff requests that the court award her all expenses she has incurred in connection with this motion to compel and to issue sanctions against defendant. Rule

37(a)(5)(C) of the Federal Rules of Civil Procedure allows a court to award a moving party fees and expenses [impose sanctions] where, as here, a motion to compel is granted in part and denied in part. Under that rule, the court may "apportion the reasonable expenses for the motion."[56]

After carefully considering the factual record and the arguments of counsel, the court does not find an award of fees and expenses to be warranted. Both parties are at fault to some degree. Defendant made inappropriate objections and failed to provide responsive information in response to discovery requests. However, it appears defendant was willing to cooperate with plaintiff to resolve this dispute without court intervention. Plaintiff seemed less willing to cooperate and eager to file its motion to compel. The parties are strongly encouraged to communicate and cooperate with each other before involving the court again. It is in the parties' interests to engage in this process cooperatively. "Discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter."[57] This court will not hesitate to impose sanctions on any

---

[56] Fed. R. Civ. P. 37(a)(5)(C).

[57] *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 360 (D. Md. 2008).

one— party or counsel or both— who engages in any conduct that causes unnecessary delay or needless increase in the costs of litigation.

Plaintiff's request for expenses is therefore denied. Each party shall bear its own fees and expenses incurred in connection with the motion to compel.

IT IS THEREFORE ORDERED THAT plaintiff's motion to compel **(doc. 67)** is granted in part and denied in part, as set forth herein. All discovery ordered produced herein shall be produced by **September 16, 2013.**

Dated September 3, 2013, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge